872 So.2d 952 (2004)
Carolyn R. WADE f/k/a Carolyn R. Hirschman, Appellant,
v.
Michael D. HIRSCHMAN, Appellee.
No. 5D03-2797.
District Court of Appeal of Florida, Fifth District.
April 8, 2004.
Rehearing Denied May 18, 2004.
*953 Tracy S. Carlin of Mills & Carlin, P.A., Jacksonville, for Appellant.
Linda Logan Bryan of Miller, Shine & Bryan, P.L., St. Augustine, for Appellee.
SHARP, W., J.
Carolyn Wade, the former wife and mother, appeals from an order of the trial court modifying the parties' prior dissolution decree, which had incorporated a split rotating custody agreement, by granting the primary residence of the parties' minor son to Michael Hirschman, the former husband and father. Finding no abuse of discretion, we affirm.
The parties were divorced in October 2000, and neither was named primary residential custodian of their child. After mediation, the parties agreed to a split rotating custody and parenting coordinator plan. It was approved by the court on November 8, 2001, and the parties were ordered to abide by its terms. However, Wade refused to sign the mediated agreement. As noted by the court in its decree, Wade said she objected to all paragraphs of the agreement. The court found her disagreements "unreasonable." Wade did not appeal from this decree.
In this modification proceeding, the parties both alleged there had been a substantial change in circumstances and both sought primary residential custody of the child. After an evidentiary hearing, the trial court determined that the split rotating custody plan had failed because Wade consistently refused to abide by the plan, she refused to work with the parenting coordinators, she frustrated their efforts, and she was "totally disruptive." However, the trial court was uncertain as to which legal standard should be applied to this modification proceeding.
Three different standards were potentially applicable, and the court questioned which approach to take. Should it be the "extraordinary burden test" of establishing a substantial and material change of circumstances[1] and the best interest of the child, which some courts say also requires the finding or evidence in the record that there would be some detriment to the child in leaving him or her in the custody arrangement established by the decree sought to be modified?[2]
Or, should the standard be the arguably lesser proof requirements of section 61.13(4)(c)(5), which gives the judge the option to award custody to the "non-custodial" parent upon the non-custodial parent's request, if the "custodial parent" refuses to honor the other parent's visitation rights, and if the award is in the best interest of the child?[3] There was little evidence in the record that Wade substantially interfered with Hirschman's visitation rights so we do not address this ground. Further, in this case, there is no "custodial" or "non-custodial" parent.
*954 Or, since this proceeding involves a split rotating custody arrangement and there is no parent with primary residential custody, should the court, after determining that the split rotating custody arrangement is unworkable and doomed to future failure, make an analysis based on the criteria set forth in section 61.13(3)(a), which are applicable in an original child custody determination and to which appellate courts give much greater deference?[4] The trial court in this case made sufficient fact findings to cover all bases.
Wade's primary argument on appeal is that the trial court was required to base its decision on the substantial change in circumstances test and best interest of the child, in the sense that it would be detrimental to the child to leave him in the original rotating custody arrangement. This standard has been adopted by all of the Florida appellate courts in an effort to forestall repeated child custody modification proceedings being filed and to achieve stability and finality in child custody degrees. It is not in the best interest of children or their parents to have constant protracted litigation concerning child custody or primary residency.[5]
If this standard were applied by the trial court, Wade argues, Hirschman failed to establish that there was a substantial change in circumstances due to Wade's disruption of the split rotating custody arrangement and parenting plan involving parenting coordinators, because she had engaged in all of the kinds of behavior relied upon by the court in finding a substantial change of circumstance, long before the court rendered its final decree which imposed the split rotating custody/parenting coordinator agreement on her. For example, she involved the child in the parties' disputes, was mentally unstable and too attached to the child, she disparaged the father to the child and others, and she coached the child to Wade's advantage. The record bears out her arguments. Many of these behaviors had been ongoing prior to the decree incorporating the split rotating custody arrangement.
Further, Wade argues, there was no evidence adduced at trial that the child had suffered any detriment while in her care or that her behavior had negatively impacted the child in any way. The record indicates that the child was not negatively impacted by Wade's actions. Dr. Risch, a psychologist who counseled with the child before the modification hearing, testified the child had no diagnosable emotional distress, and Dr. Hoza, a clinical psychologist, testified the child was well adjusted, no longer needed therapy, was "happy go lucky," and resilient. The child's teachers agreed, and he was doing well in school.
We do not need to address the issues of whether Hirschman sufficiently established a substantial change of circumstances and that the change of custody was in the child's best interest, including whether a detriment to the child was established if left in the original rotating custody arrangement, because we do not think that test is applicable in a case like this one where there is no primary residential parent, and the parties have split rotating custody.[6] Once it is established *955 through substantial and competent evidence that the split rotating custody plan has failed and is doomed to future failure, for whatever reason (the child's obtaining school age, or one party's complete refusal to adhere to the plan), then the court should be free to redetermine custody based on the considerations set out in section 61.13, as though it were making an initial custody determination. The trial court addressed all of the factors set forth in section 61.13(3)(a) through (j) and (m). They are supported by competent and substantial evidence in the record. We cannot say the trial judge abused his discretion in making this custody decision.
More than hostility between the parties and their inability to get along or communicate was established in this case. The court found that Wade undermined, alienated and refused to cooperate with the parenting coordinators, whose responsibility it was to make the rotating custody plan work. Although not essential to our ruling, it is instructive that the Order of the court dated November 2001, which approved the parties' split rotating custody agreement, warned that "[f]ailure to comply with the parenting plan may be considered contempt and could affect the parties' visitation and/or custody rights." The court approved the split rotating custody plan, based on its understanding that the parties would comply with the plan and cooperate with the parenting coordinators. When that assumption was not fulfilled, it is sensible to let the court return to "square one."
Wade also argues in this appeal that the court erred in denying her visitation with the child, supervised or unsupervised, until she had undergone a complete psychological evaluation update with regard to the safety of the child, with a court-appointed doctor, and until the appointed doctor's report had been filed and considered by the court. By the time briefs were filed in this case, the evaluation had been performed and unsupervised visitation was restored to Wade. Under the circumstances of this case[7] we think the court's ruling was a fair "judgment call" and was not an abuse of discretion. See Scheer v. Scheer, 132 So.2d 456 (Fla. 3d DCA 1961).
AFFIRMED.
GRIFFIN and PLEUS, JJ., concur.
NOTES
[1] See Knipe v. Knipe, 840 So.2d 335 (Fla. 4th DCA), rev. denied, 849 So.2d 1088 (Fla.2003); Wyckoff v. Wyckoff, 820 So.2d 350 (Fla. 2d DCA), rev. denied, 821 So.2d 305 (Fla.2002); Glover v. Glover, 820 So.2d 324 (Fla. 5th DCA 2001); Perez v. Perez, 767 So.2d 513 (Fla. 3d DCA 2000); Greene v. Suhor, 783 So.2d 290 (Fla. 5th DCA), rev. denied, 796 So.2d 538 (Fla.2001); Schweinberg v. Click, 627 So.2d 548 (Fla. 5th DCA 1993); Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984).
[2] Wyckoff; Perez; Burger v. Burger, 862 So.2d 828 (Fla. 2d DCA 2003); Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1996); Wages v. Wages, 660 So.2d 797 (Fla. 5th DCA 1995)
[3] See Williams v. Williams, 676 So.2d 493 (Fla. 5th DCA 1996).
[4] See, e.g., Miller v. Miller, 671 So.2d 849 (Fla. 5th DCA 1996); Ackerson v. Murphy, 622 So.2d 154 (Fla. 5th DCA 1993).
[5] See Hammac v. Hammac, 866 So.2d 191 (Fla. 1st DCA 2004) (Wolf, J., concurring). Knipe v. Knipe, 840 So.2d 335 (Fla. 4th DCA 2003); Perez v. Perez.
[6] Mooney v. Mooney, 729 So.2d 1015 (Fla. 1st DCA 1999). But see Cooper v. Gress, 854 So.2d 262 (Fla. 1st DCA 2003); Ring v. Ring, 834 So.2d 216 (Fla. 2d DCA 2002); Newsom v. Newsom, 759 So.2d 718 (Fla. 2d DCA 2000); Cassin v. Cassin 726 So.2d 399 (Fla. 2d DCA 1999); Skirko v. Skirko, 677 So.2d 885 (Fla. 3d DCA 1996), rev. denied, 689 So.2d 1071 (Fla.1997); Brenda M. Abrams, 4 Florida Family Law, § 81.01[6] at 81-11 (Mathew Bender 2003).
[7] Some of the testimony revealed that Wade's actions reflected potentially a serious mental illness and that she might unintentionally injure the child.