903 So.2d 928 (2005)
Carolyn R. WADE, f/k/a Carolyn R. Hirschman, Petitioner,
v.
Michael D. HIRSCHMAN, Respondent.
No. SC04-1012.
Supreme Court of Florida.
May 26, 2005.
*930 Tracy S. Carlin of Mills and Carlin, P.A., Jacksonville, Florida, for Petitioner.
Linda Logan Bryan of Miller, Shine and Bryan, P.L., St. Augustine, Florida, for Respondent.
BELL, J.
We have for review Wade v. Hirschman, 872 So.2d 952 (Fla. 5th DCA 2004), which expressly and directly conflicts with the decision in Cooper v. Gress, 854 So.2d 262 (Fla. 1st DCA 2003).[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. At issue is the test courts should use in proceedings to modify rotating custody agreements. The conflict to be resolved is whether the trial court should base modification of rotating custody agreements on the considerations set forth in section 61.13, Florida Statutes (2003), as if it were making an initial custody determination as *931 the Fifth District Court of Appeal held in Wade, or whether the trial court should utilize the "substantial change test,"[2] as the First District Court of Appeal held should be used in Cooper.[3] For the reasons set forth below, we conclude that the substantial change test as used in Cooper applies to modification of all custody agreements.[4]

I. FACTS AND PROCEDURAL HISTORY
In Wade, the Fifth District stated in pertinent part:
The parties were divorced in October 2000, and neither was named primary residential custodian of their child. After mediation, the parties agreed to a split rotating custody and parenting coordinator plan. It was approved by the court on November 8, 2001, and the parties were ordered to abide by its terms. However, Wade [the Mother][5] refused to sign the mediated agreement. As noted by the court in its decree, [the Mother] said she objected to all paragraphs of the agreement. The court found her disagreements "unreasonable." [The Mother] did not appeal from this decree.
In this modification proceeding, the parties both alleged there had been a substantial change in circumstances and both sought primary residential custody of the child. After an evidentiary hearing, the trial court determined that the split rotating custody plan had failed because [the Mother] consistently refused to abide by the plan, she refused to work with the parenting coordinators, she frustrated their efforts, and she was "totally disruptive." However, the trial court was uncertain as to which legal standard should be applied to this modification proceeding.
Id. at 953.
The trial court found that the rotating custody plan had failed, that there had been substantial and material changes in circumstances since the entry of the final judgment, and that the rotating custody agreement was no longer in the best interest of the child. The trial court then applied the factors in sections 61.13(3)(a) and 61.13(4)(c)(5), Florida Statutes (2003),[6] and ordered the parties to have shared parental responsibility with the Father[7] as the primary residential parent.
The Mother appealed. The Fifth District did not decide whether the Father met the requirements of the substantial change test. Instead, the Fifth District held the substantial change test did not apply and announced a new test for modification *932 of rotating custody agreements. This new test would apply where the parties have split rotating custody. "Once it is established through substantial and competent evidence that the split rotating custody plan has failed and is doomed to future failure, for whatever reason (the child's obtaining school age, or one party's complete refusal to adhere to the plan), then the court should be free to redetermine custody based on the considerations set out in section 61.13, as though it were making an initial custody determination." Wade, 872 So.2d at 954-55 (emphasis added).[8] The rationale articulated in Wade was that in rotating custody cases, there is no primary residential parent; thus, the court should be free to make a de novo custody determination based on the considerations set forth in section 61.13(3).
The Mother petitioned this Court for review, alleging express and direct conflict with Cooper v. Gress, 854 So.2d 262 (Fla. 1st DCA 2003). Contrary to the Fifth District's approach in Cooper, the First District held that the substantial change test applied to modifications of rotating custody agreements. Id. at 263. We granted review to resolve this conflict.
In Cooper, the First District held:
The posture of a modification proceeding is entirely different from that of an initial custody determination, and the party seeking to modify custody has a much heavier burden to show a proper ground for the change. The trial judge's personal observation, stated in the record, that rotating custody arrangements never work, does not justify modifying the custody plan, absent a substantial change of circumstances resulting in the modification's being in the children's best interests.
Id. at 267.
Given the conflict in the district courts in Wade and Cooper, we must determine the test for modification of a rotating custody agreement. Because the conflict issue is a question of law, the standard of review is de novo. See Blanton v. City of Pinellas Park, 887 So.2d 1224, 1226-27 (Fla.2004). We conclude that unless otherwise provided in the final judgment, the two-part substantial change test used in Cooper applies to modification of all custody agreements.[9] Accordingly, we quash the decision of the Fifth District Court of Appeal in Wade and approve the trial court's decision below.

II. Res Judicata
A final divorce decree providing for the custody of a child can be materially modified only if (1) there are facts concerning the welfare of the child that the court did not know at the time the decree was entered, or (2) there has been a change in circumstances shown to have arisen since the decree. Belford v. Belford, 159 Fla. 547, 32 So.2d 312, 314 (1947). This rule promotes the finality of the judicial determination of the custody of children. After the trial court enters the original final judgment decree, it is res judicata *933 of the facts and circumstances at the time the judgment became final. Thus, there is a presumption in favor of the reasonableness of the original decree. Id. This presumption may be overcome when changes in circumstances have arisen which warrant and justify modification of the original decree. See In re Gregory, 313 So.2d 735, 738 (Fla.1975); Frazier v. Frazier, 109 Fla. 164, 147 So. 464, 466 (1933). To modify such judgments, the trial court must decide whether there is a "factual basis sufficient to show that conditions have become materially altered since the entry of the previous decree." Id. at 467. The degree of change in the conditions and circumstances since the date of the previous decree must be of a substantial character. Bennett v. Bennett, 73 So.2d 274, 278 (Fla.1954).

III. The Substantial Change Test in Statutory and Common Law
The trial court determines the initial custody of children in dissolution of marriage proceedings pursuant to the guidelines set forth in section 61.13, which require all matters related to the custody of a minor to be determined in accordance with the best interest of the child. § 61.13(2)(b)(1), Fla. Stat. (2003). Section 61.13(2)(c) grants continuing jurisdiction to the circuit court to modify the custody order but does not state the conditions necessary for modification. We therefore look to case law for guidance on how to make this determination.
Several district courts of appeal have provided slight variations of the substantial change test. The substantial change test has been described as both a two-part and a three-part test. For example, in Voorhies v. Voorhies, 705 So.2d 1064, 1065 (Fla. 1st DCA 1998), the First District stated that the party seeking a modification carries the extraordinary burden of proving (1) a substantial and material change in circumstances, and (2) that the best interests of the child will be promoted by such modification. This is essentially the test applied in Cooper.
The Second and Third Districts have added to the substantial change test an implicit finding of detriment by the trial court. The arguments advanced for requiring evidence of detriment have been couched as promoting the stability of the child, Perez v. Perez, 767 So.2d 513, 517 (Fla. 3d DCA 2000), and preventing micromanagement of the child's custody by the trial court, Gibbs v. Gibbs, 686 So.2d 639, 645 (Fla. 2d DCA 1996).[10] Also, the finding of detriment has apparently been used to increase the magnitude of the burden required to overcome the res judicata effect of the previous decree. See, e.g., Metcalfe v. Metcalfe, 655 So.2d 1251, 1253 (Fla. 3d DCA 1995) ("[E]vidence tended to show that there has been a substantial and material change of circumstances ... of such a magnitude that it would be detrimental for the children to remain in the custody of the husband....").[11]
*934 The arguments favoring a finding of detriment fail to recognize adequately the purpose of the "best interest of the child" prong of the substantial change test, which when properly applied ensures the stability of custody-related awards because of the res judicata effect of the original decree. Moreover, the detriment requirement conflicts with section 61.13(3), which enumerates the factors affecting the welfare and best interest of the child, which the trial court is to consider in proceedings dealing with shared parental responsibility and primary residence.
We agree with Judge Cope's special concurrence in Perez in which he opined:
The detriment-to-the-child standard obviously conflicts with Florida's shared parenting law.... Moreover, it appears to turn the best interests standard on its head. One clearly could demonstrate that a change of custody would promote the child's best interest, thereby helping the child, while not having evidence that the current situation would be detrimental to the child.
Perez, 767 So.2d at 521 (quoting The Florida Bar, Florida Dissolution of Marriage § 11.92 (5th ed.1998)). Requiring proof of detriment is inconsistent with this Court's prior holdings and is not an element of the substantial change test necessary to modify a child custody award.

IV. Application of the Substantial Change Test to the Facts
The substantial change test articulated herein applies to the modification of a divorce decree providing for the custody and care of a child. A decree for purposes of the substantial change test includes both a decree that has incorporated a stipulated agreement concerning child custody and a decree awarding custody after an adversarial hearing. See Frazier, 147 So. at 466. In other words, a party seeking to modify a final decree adopting an agreement to rotate custody must satisfy the identical substantial change test that applies in cases involving the modification of custody orders after an adversarial hearing on the issue of custody. In either circumstance, satisfaction of the substantial change test is necessary in order to overcome the res judicata effect of the final judgment.[12]
We disapprove of the test to modify existing rotating custody agreements as announced by the Fifth District in Wade. That test simply requires proof that the rotating custody plan has failed and then applies the "best interest" standard of section 61.13 as used in an initial determination of custody. We disapprove because the Fifth District did not hold that failure of a rotating custody agreement is tantamount to a substantial change in circumstances and did not otherwise indicate how it overcomes the res judicata effect of the original decree. In its original final judgment, the trial court in Wade made an initial custody determination when it found that shared parental responsibility with rotating custody was in the best interest of the child. Res judicata attached to that determination and that determination cannot be modified without satisfying the substantial change test. See, e.g., Belford v. Belford, 159 Fla. 547, 32 So.2d 312 (1947); *935 Newsom v. Newsom, 759 So.2d 718, 719 (Fla. 2d DCA 2000); Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984).

V. The Trial Court's Decision
Having determined that the substantial change test applies to modifications of rotating custody, we now review the order of the trial court below that changed custody from rotating custody to shared parental responsibility and designated the Father the primary residential parent. On appellate review, an order changing custody has a presumption of correctness and will not be disturbed absent a showing of abuse of discretion. In re Gregory, 313 So.2d at 738.
The trial court in Wade concluded that there were substantial and material changes in circumstances, and its findings are supported by competent, substantial evidence, including: evidence of parental alienation of the Father by the Mother; failure of the Mother to cooperate with the parenting coordinator and comply with the parenting agreement; violation of shared parental responsibility as evidenced by the Mother's unilateral change of the child's elementary school and her unilateral change of the child's therapist; and the finding that the Mother was in contempt of court for her actions relative to visitation. The trial court considered the factors in section 61.13(3)(a) through (j) and (m)[13] and found that the shared rotating custody agreement was no longer in the best interest of the child. The trial court further found that it was in the best interest of the child for the parties to be awarded shared parental responsibility with the Father as the primary residential parent. We cannot find that the trial court abused its discretion in modifying the custody agreement. Thus, we agree with the trial court's decision.

CONCLUSION
For these reasons, we quash the decision of the Fifth District Court of Appeal and direct the Fifth District to enter an order affirming the trial court's order. We also approve the use of the substantial change test as articulated in Cooper in proceedings seeking modification of custody, including rotating custody agreements.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] We granted review on September 21, 2004. Wade v. Hirschman, 884 So.2d 26, 2004 WL 2374220 (2004).
[2] This substantial change test requires

the movant [seeking modification of custody] must show both that the circumstances have substantially, materially changed since the original custody determination and that the child's best interests justify changing custody. Furthermore, the substantial change must be one that was not reasonably contemplated at the time of the original judgment.
Cooper, 854 So.2d at 265 (citations omitted).
[3] In Johnson v. Adair, 884 So.2d 1169 (Fla. 2d DCA 2004), the Second District Court of Appeal applied a version of the substantial change test that differs somewhat from that used in Cooper. In Leng-Gross v. Gross, 898 So.2d 241 (Fla. 4th DCA 2005) (mandate issued Apr. 1, 2005), the Fourth District Court of Appeal applied the test used in Johnson.
[4] See note 9, infra.
[5] Petitioner, Carolyn R. Wade, is the mother and former wife, and will be referred to herein as "the Mother."
[6] The trial court was uncertain what legal standard applied to the modification proceeding. Wade, 872 So.2d at 953-54.
[7] Respondent, Michael D. Hirschman, is the father and former husband, and will be referred to herein as "the Father."
[8] A "split rotating custody" agreement, as it implies, is synonymous with "rotating custody" agreement where there is shared parental responsibility, but no primary custodial parent has been designated, and the parents alternate custody of the child. See Wade, 872 So.2d at 954.
[9] The substantial change test applies unless the judgment otherwise provides for the standard that should be applied when one party seeks a modification. See, e.g., Mooney v. Mooney, 729 So.2d 1015, 1016 (Fla. 1st DCA 1999) (parents agreed that beginning of school would constitute a change in circumstances which would require custody to be readdressed); Greene v. Suhor, 783 So.2d 290, 290-91 (Fla. 5th DCA 2001) (custody order provided that either parent could seek reconsideration of the custody issue when the child started school without showing a change in circumstances).
[10] The Second District in Gibbs explained that to meet the second prong of the substantial change test, the trial court must find that a change in custody will so clearly promote or improve the child's well-being that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interest. Id. at 641. The Third District in Perez stated that the best interest prong requires "proof that a child's continuing residence with the custodial parent would be detrimental to or have an adverse impact upon the child." 767 So.2d at 516 (emphasis added). In Johnson v. Adair, the Second District relied on the test used in Gibbs. Johnson, 884 So.2d at 1173. The Fourth District in Leng-Gross v. Gross agreed with the test used in Gibbs and Johnson.
[11] Requiring proof of detriment to the child in order to show a substantial and material change of circumstances misstates the burden that is necessary to overcome the res judicata effect of the previous decree and conflicts with the best interest standard because it restricts the trial court's ability to act in the best interest of the child in custody modification proceedings. This restriction on the trial judge is contrary to the intent of the Legislature to give trial judges wide latitude to work equity in chapter 61 proceedings. See § 61.011, Fla. Stat. (2004) ("Proceedings under this chapter are in chancery.").
[12] Although rotating custody is typically an arrangement agreed to by the parties, section 61.121, Florida Statutes (2004), authorizes the trial court to "order rotating custody if the court finds that rotating custody will be in the best interest of the child."
[13] Wade, 872 So.2d at 955.